# EXHIBIT A

# AGENCY AGREEMENT

This agreement (the "*Agreement*") is entered into as of May 8, 2004, between BND CO., LTD, a subsidiary of BNBM GROUP LIMITED, with its principal business located at 12/F International Trade Building, ShenZhen, 518014, China (the "*Company*") and BNK International LLC (the "*Agent*"), a Texas USA company, located at 9102 Country Canyon Cove, Austin, TX 78759, USA.

### RECITALS

WHEREAS, the Company desires to authorize Agent to identify, negotiate and secure customers in the United States of America to purchase from Company hardwood floor products that are manufactured by Company or by third party manufacturers contracted by Company ("*Product*").

WHEREAS, Agent intends to identify, negotiate and secure customers in the United States of America to purchase Product from Company through Agent.

WHEREAS, typical profiles of customers for Product in the US market include, but not limited to:
1) Manufacturers in the US that uses Company as its OEM vendor for Product;
2) Distributors or wholesalers in the US that uses Company as its OEM vendor for Product;
3) Distributors or wholesalers in the US that purchase Product from Company;
4) Retailers in the US that use Company as its OEM vendor for Product;
5) Retailers in the US that purchase Product from Company; and
6) Builders in the US that purchase Product from Company.

1. **Effective Customer.**

1) Upon receiving the identity of a potential customer ("*Potential Customer*") from Agent, Company shall notify Agent if Company has any existing business relationships, including but not limited to Product, with the Potential Customer. The notification shall be delivered to Agent within two (2) business days in verbal and be followed up with delivery of supporting documents to Agent within five (5) business days. Failure by Company to notify Agent within the time periods above in both forms is deemed a recognition by Company that the Potential Customer is an effective customer ("*Effective Customer*"). Any Potential Customer notified by the Agent to the Company which does not have any existing business relationship with the Company is deemed recognition by Company that the Potential Customer is an Effective Customer.

2) An Effective Customer is subject to this Agreement.

3) Effective Customer will lose its status as an Effective Customer if its first Purchase Order, Sales Contract or any other business arrangements used to effect a purchase

(collectively "*PO*") does not occur within the first six (6) months immediately after recognition by the Company as an Effective Customer.

4) Company shall provide Agent with an official recognition letter of the Effective Customer within 30 days from the date Company was first notified of the identity of the Effective Customer.

2. **Compensations.**

    1) Agent is compensated by receiving a profit mark-up ("*Profit Markup*"), determined by the sole discretion of Agent, added on top of the Product price quotations ("*Company's Quotations*") and packaging fees quotations provided by Company and have the final Agent's price quotations ("*Agent's Quotations*") accepted by the Effective Customer. Agent may, but is not obligated to, disclose his mark-up information to Company.

    2) Company need not pay Agent with other compensations unless explicitly noted in this Agreement or with separate written agreements.

    3) Company agrees that Agent shall continue to be compensated as long as its Effective Customer(s) purchase Product from Company regardless if PO's are placed with Agent or Company; regardless if payments made by Effective Customer are sent to Agent or Company; and regardless if there has been an interruption of PO placement, provided the continuous interruption of PO placement from the Effective Customer is less than twelve (12) months.

3. **Disclosure of Profit Markup.** In the event that Agent elects to disclose its Profit Markup information to Company for a certain product of the Product, the following terms become effective.

    1) Agent is entitled to keep a profit margin ("*Margin*") up to 20%.

    2) In the event Margin is greater than 20%, Agent will continue to receive one-half (1/2) of each percent point that is over 20% and Company is entitled to receive one-half (1/2) of each percent point that is over 20%.

    3) In the event that Margin is less than 12%, Company shall pay to Agent an amount equal to one-half (1/2) of each percent point that is less than 12%.

    4) Agent must first obtain approval from Company before presenting to Effective Customer with Agent's Quotations that has a profit margin less than 12%.

    5) The base ("*Margin Base*") for calculating Margin is the sum of Company's Quotations and any packaging fees quoted and provided by the Company to Agent.

      6) Margin is calculated by dividing the Profit Markup by Margin Base.

      7) Company shall disclose in reciprocal to Agent with its cost and profit structures in connection with Product.

      8) When changing Company's Quotations, Company must provide proofs of changes in its cost or profit structures as the basis for changes. Any upward revision of Company's Quotations cannot be more than the changes provided in the proofs. Agent shall have the right, at is own expense, with a five business day prior notice, to inspect Company's relevant accounting records during regular business hours to verify the change in the Company's cost or profit structure.

4. **Communications with Customers.** Company agrees that all communications with Potential Customer (other than those that have existing business relationships with Company) or Effective Customer (collectively "Customers") shall go through Agent without exceptions unless it is explicitly authorized by Agent in writing on a case-by-case basis.

5. **Negotiations with Customers.** Company agrees that all negotiations with Customers must be conducted by Agent without exceptions unless it is explicitly authorized by Agent in writing. In the event that Company negotiates Product prices and terms with Customers directly without a prior written consent from Agent or which exceeds the scope authorized by Agent, Agent is entitled to Fifteen Percents (15%) of the prices agreed upon between Company and Customers or Fifteen Percent (15%) of total sales amount Company receive from the Customers (either through a purchase order, sales contract, or any other business arrangements), whichever is higher, as the compensation.

6. **Communications of Purchase Orders.**

      1) Agent shall disclose Effective Customer's PO information to Company to obtain Company's commitment in its ability in meeting the requirements. Agent shall disclose the following terms, but not limited to, in the PO to Company:
          1. Quality Requirements
          2. Quantity Requirements
          3. Delivery Requirements
          4. Delivery Dates, and
          5. Penalty Clauses

      2) Any failure by Company to notify the rejection or modification of the PO within three (3) business days of receiving the PO shall be deemed as acceptance of the PO in its full terms, provided Agent communicates the PO to Company in both verbal and written forms.

      3) Company shall not accept any PO for Product from Effective Customer directly or through any third party other than Agent.

7. **Payments.**

   1) If payments made by Effective Customer are sent to Company directly, Company agrees to deliver Agent's Profit Markup portion no later than 3 business days after receipt of payments from Effective Customer. A 2% weekly charge will apply if the payment is not received by Agent within the said period.

   2) If payments made by Effective Customer are sent to Agent directly, Agent agrees to deliver Company's portion no later than 3 business days after receipt of payments from Effective Customer. 2% weekly interest charge will apply if the payment is not received by Company within the said period.

   3) Agent may elect the payment from Company be made in US dollars or RMB. If paid in RMB, the prevailing exchange rates will apply.

   4) This clause is subject to relevant Chinese governing laws in foreign currencies regulations.

8. **Product Quality Assurance.** Company agrees to provide Product quality assurance report, such as Taber test report, to Agent on a monthly basis or upon request to ensure the Product quality is consistent and met with Effective Customer's requirements. Agent will try to obtain quantified quality requirements from Effective Customer for Company.

9. **Third Party Manufacturers.** Company must obtain Agent's approval and provide Agent with an assessment report of the third party manufacturer's qualifications, quality control process and production capacity prior to using or changing any third party manufacturers for the Products.

10. **Export Agency.** Company shall notify Agent when there is a change of Company's export agency or export company.

11. **OEM Authorization.** When an Effective Customer places OEM PO with Agent, Agent must obtain the following from the Effective Customer for the Company:

    1) Proof of ownership or registration of the OEM brand by the Effective Customer; and

    2) Authorization documents issued by Effective Customer to authorize Agent or Company to manufacture the OEM product.

12. **First Right of Refusal on Agency Rights with other products.** Agent shall have First Right of Refusal when Effective Customer intends to purchase products other than Product ("*Other Products*") from Company. Agent shall be entitled to the same rights and terms outlined in this Agreement with regard to those Other Products (the "Other Products shall become the "Product") once the first right of refusal is exercised by Agent. The first right of refusal is deemed exercised when Agent has successfully secured a PO of Other Products from Effective Customer

and has the PO accepted by the Company.

13. **Undertaking by Agent.** Agent undertakes to cause its major shareholder (Jeffrey J. Chang) to grant Company the first right of refusal on any of his future transfer of the shares in Agent.

14. **Joint Venture with Customers.** If Company is to enter into a joint venture or any other similar business arrangements (collectively "Joint Venture") with any of the Customers related to Product, Agent shall have the right to participate in the Joint Venture with at least 15% of total equity. Further, payment by Agent in the Joint Venture may be made in installments and up to 24 months after the establishment of the Joint Venture.

15. **Terms, Termination and Renewal of Agreement.**

    1) The effective period for the Agreement is three (3) years from the date Agreement is executed. The Agreement is renewable with mutual consent at the end of the terms; or is automatically renewed at the end of the terms if the following Performance Requirement is met by Agent:

        Performance Requirement: Under the condition that Company can fulfill all PO's produced by Agent, the sales volume must reach USD$3,000,000, based on Company actual transacted amount, in the last 12-month period of the three (3) 12-month periods of the Agreement.

    2) All Effective Customer recognized during the effective period of Agreement shall continue to be subject to the terms and conditions of Agreement even after termination of Agreement.

    3) Should Agreement terminate after a customer is recognized as an Effective Customer but before the first PO is placed by the Effective Customer, the customer is subject to Agreement should he successfully place its first PO with Agent or Company within the six (6) month following the termination of the Agreement.

    4) Company shall have the rights to modify or terminate this Agreement should Jeffrey J. Chang fail to maintain as the largest shareholder in Agent. This clause does not apply should the Company or its parent company or its sister companies or its subsidiaries or its affiliated companies become shareholders of BNK International LLC.

16. **Incentive Rebate.**

    1) In each of the three (3) 12-month periods of Agreement, a 0.25% rebate will be provided by Company to Agent if the sales amount for the period is greater than or equal to USD$5,000,000 but less than USD$7,500,000. The sales amount is based on Company recorded transactions for the period.

    2) In each of the three (3) 12-month periods of Agreement, a 0.5% rebate will be provided by Company to Agent if the sales amount for the period is

greater than or equal to USD$7,500,000. The sales amount is based on Company recorded transactions for the period.

    3) The rebates are payable five (5) business days after the end of each of the three (3) 12-month period of Agreement.

17. **Binding Entities.** This Agreement is binding to Company and all Company's subsidiaries. When the Company's sister companies or affiliated companies also approach Effective Customer, the Company will actively involve protecting Agent's stated interests and rights in this Agreement. The Company undertakes to immediately inform Agent when any of its subsidiaries or affiliated companies start to engage in a business of selling competing products and shall cause these companies agree to be bound by this Agreement.

18. **Reimbursement of Fees.** Company shall reimburse Agent any fees or expenses that are spent by Agent on behalf of Company immediately upon submission of receipts of invoices, provided the fees or expenses have prior approval from Company.

19. **Trademarks and Trade names.** During the term of this Agreement, Agent shall have the right to indicate to the public that it is an authorized agent of the Company's Products and to advertise such Products under the trademarks, marks and trade names that Company may adopt from time to time. Nothing herein shall grant Agent any other right, title or interest in Company's trademarks.

20. **Indemnification by Company.** Company shall indemnify and hold Agent free and harmless from any and all claims, damages or lawsuits (including attorneys' fees) arising out of defects in the Products caused by Company, failure of Company to provide Product to any Effective Customer that has been properly ordered through Agent, or failure of Company to provide Product that meets the product requirements specified by the Effective Customer.

21. **Assignment.** The rights, duties or obligation under this Agreement may not be assigned by either party except with the other party's prior written consent. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties.

22. **Notice.** Any notice, request, demand, or other communication required or permitted hereunder shall be deemed to be properly given by dispatching certified or registered mail addressed:

  (a) in the case of Company to: [Address]
        Attention: [Person]

  (b) in the case of Agent, to: 9102 Country Canyon Cove, Austin, TX 78759, USA
        Attention: Jeffrey J. Chang

or to such other person or address that the receiving party from time to time duly furnished to the other parties.

23. **Amendment.** The parties hereto agree that this Agreement may be modified only by a written agreement duly executed by persons authorized to execute agreements on behalf of the parties.

24. **Completeness.** This Agreement supercedes all previous agreements or understandings between the parties with respect to the subject matter.

25. **Severability.** If any provision of this Agreement is prohibited by the laws of any jurisdiction in which this Agreement may be used or to which it may be applicable, said provision shall be, as to said jurisdiction, ineffective to the extent of such prohibition, without invalidating thereby any of the remaining provisions of this Agreement.

26. **No Implied Waiver.** The failure of any party at any time to require performance by the other party of any provision hereof shall not affect in any way the full right to require such performance at any time thereafter. Nor shall the waiver by either party of a breach of any provision hereof be taken or held to be a waiver of the provision itself.

27. **Chinese Version.** A Chinese version of this Agreement will be prepared and signed within 30 days of the date hereof. The Chinese version of the Agreement shall follow the terms in this Agreement precisely. Once signed by both parties, the Chinese version of this Agreement shall supersede this Agreement. If no Chinese version of this Agreement is prepared and signed within 30 days of the date hereof, then this Agreement shall become final agreement between the parties

28. **Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the People's Republic of China. Any controversy or claim between the parties arising out of or relating to the Agreement or the breach thereof shall be submitted to arbitration held in Hong Kong. Any judgment rendered in such arbitration proceeding shall be final and binding on each of the parties, and may be entered thereon in any court of competent jurisdiction. Nothing herein shall limit the right of the Agent to seek an injunction against the Company's property inside and outside the People's Republic of China prior to the final arbitration judgment is reached.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

| BND Co., LTD. | BNK INTERNATIONAL LLC |
|---|---|
| BY: _____ | BY: _____ |
| NAME: Mr. Bai Ian | NAME: Jeffrey J. Chang |
| TITLE: Executive Vice President | TITLE: President |
| DATE: _____ | DATE: May 6, 2004 |



## ADDENDUM TO THE AGENCY AGREEMENT

This Addendum is made on April ___, 2005, by and between BND Co., Ltd. (the "Company") and BNK International LLC (the "Agent").

Whereas, the Company and the Agent entered into an agency agreement dated May 8, 2004 (the "Agency Agreement") where the Agent is authorized to act as the Company's agent for selling the Company's hardwood floor products in the U.S.

Now it is hereby agreed by both parties that the following terms are added to the Agency Agreement:

1. The "Product" as described under the Recital section of the Agency Agreement shall be expanded to include "all building materials" manufactured by the Company or by third party manufacturers contracted by the Company.

2. The following clause shall be added to the Agency Agreement:

   **29. Entire Contract.** This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written.

3. The following clause shall be added to the Agency Agreement:

   **30. Authorization.** Each party warrants that their signature to this Agreement or their signature on subsequently executed PO is in fact authorized and they are of a capacity within their organizations to enter into such transactions and each party may rely on their representation and signature when entering into contracts.

4. The following clause shall be added to the Agency Agreement:

   **31. Confidentiality.** Both parties acknowledge that during the course of this Agreement, each may obtain confidential information regarding the other party's business. Both parties agree to treat all such information and the terms of this Agreement as confidential and to take all reasonable precautions against disclosure of such information to unauthorized third parties during and after the term of this Agreement. Upon request by an owner, all documents relating to the confidential information will be returned to such owner.



IN WITNESS WHEREOF, the parties have duly executed this Addendum to the Agency Agreement as of the date first above written.

BND Co., Ltd.

_____ 4/5/05
Name: Ian Bai
Title: Executive Vice President

BNK International LLC

_____ 4/29/05
Name: Jeffrey J. Chang
Title: President

2