# EXHIBIT B

IN THE MATTER OF THE ARBITRATION ORDINANCE (CAP. 341)

and

IN THE MATTER OF AN ARBITRATION

———————

BETWEEN

    CHINA NATIONAL BUILDING MATERIAL
    INVESTMENT CO LTD
    (formerly known as "BND Co Ltd")               The Claimant

and

    BNK INTERNATIONAL LLC             The Respondent

———————

**FINAL AWARD (SAVE AS TO COSTS)**

**WHEREAS**

1.    By an agreement in writing entered into by the Claimant (trading under its former name of "BND Co Ltd') and the Respondent on or about 8 May 2004 ("the Agreement"), the Respondent agreed to secure customers in the United States of America to purchase from the Claimant hardwood floor products that are either manufactured by the Claimant or by third party manufacturers contracted by the Claimant.

2.    By an Addendum in writing signed by the Respondent on 29 April 2005 and the Claimant on 12 May 2005, it was agreed that the product as described in the Agreement should be expanded to include all building materials manufactured

- 1 -

by the Claimant or by third party manufacturers contracted by the Claimant.

3.     Under Clause 28 of the Agreement, both parties agreed that any controversy or claim between the parties arising out of or relating to the Agreement or the breach thereof shall be submitted to arbitration held in Hong Kong.

4.     A dispute arose as to the final balance due to the Claimant under the Agreement. On 30 January 2008, the Claimant, having appointed Mr. Philip Yang of Unit A, 18F, Casey Building, 38 Lok Ku Road, Sheung Wan, Hong Kong, the arbitrator for the Claimant, served a Notice of Arbitration on the Respondent and required the Respondent to appoint an arbitrator for the Respondent.

5.     There being no response from the Respondent, the Claimant applied, on 10 April 2008, to the Hong Kong  International Arbitration Centre ("HKIAC") for the appointment of an arbitrator for the Respondent.

6.     On 22 May 2008, the Secretary-General of the HKIAC appointed Mr. Fed Kan of 3104 Central Plaza, 18 Harbour Road, Hong Kong, the arbitrator for the Respondent.

7.     On 28 May 2008, Mr. Philip Yang and Mr. Fred Kan jointly appointed Mr. Danny Choi of Room 87, 8/F, New Henry House, 10 Ice House Street, Central, Hong Kong, the third arbitrator. An arbitral tribunal was therefore properly constituted.

8.     On 6 June 2008, the tribunal received from the Claimant the Statement of Claims.   The  Claimant  claims  against  the  Respondent  a  sum  of

US$2,975,443.06 being the balance of the price for the hardwood floor products shipped to US importers designated by the Respondent. In addition, the Claimant seeks an award for interest and costs.

9.   On 15 August 2008, the tribunal received from the Respondent the Defence Submissions. The Respondent admits its liability to pay US$2,809,649.73 but says that it was given time to repay any sum owed to the Claimant until 21 January 2009. The sum in dispute is therefore US$165,793.33 (US$2,975,443.06 – US$2,809,649.73). The defence is that the Claimant ought to give credit to the Respondent for two deductions, one for defective goods (US$25,793.33) and one for donations (US$140,000.00).

10.  On 26 August 2008, the tribunal received from the Claimant a witness statement of Cai Guo Bin ("Mr. Cai").

11.  On 3 November 2008, the tribunal received from the Respondent a witness statement of Mr. Jeffrey Chang ("Mr. Chang").

12.  An oral hearing on 1 December 2008 for 4 days was discussed and ordered by the tribunal on 16 October 2008.

13.  On 19 November 2008, the Respondent's solicitors informed the tribunal that Mr. Chang was suffering from a medical condition and that it was unlikely that he would be able to travel to Hong Kong to attend the hearing. Further enquiry revealed that Mr. Chang visited the ER of the Seton Northwest Hospital in Austin, on 17 November 2008 for treatment of an acute herniated disc in his

low back. His family doctor, Dr. Sylvia Glaze, who saw him on 19 November
2008, was of the following opinion:-

"He is still significantly impaired with back and leg pain and is unable to sit for extended
periods of times, as well as requiring medication for pain control."

14. As no indication was received as to when Mr. Chang would be fit to travel and
given that the Claimant had booked the HKIAC for the hearing and also
arranged Mr. Cai to come to Hong Kong, the tribunal was reluctant to adjourn
the hearing. The tribunal suggested video-conferencing and/or hearing the
evidence of Mr. Cai and adjourning the hearing part-heard.

15. On 25 November 2008, the Respondent's solicitors informed the tribunal that
Mr. Chang refused to attend the hearing by video conferencing and insisted on
adjournment until such time as Mr. Chang could attend and give evidence in
person. However, no new date was proposed.

16. On 27 November 2008, the Respondent's solicitors informed the tribunal of Mr.
Chang's decision to abstain from the hearing.

17. On 28 November 2008, the tribunal tried to persuade the Respondent to instruct
its solicitors to attend the hearing even though Mr. Chang's condition precluded
his ability to travel. Although the Respondent was all along represented by a
competent law firm (Messrs. DLA Piper in Hong Kong), the tribunal found it
desirable to remind the Respondent that its right to cross-examine Mr. Cai
should not be given up lightly. On the same day, the Respondent's solicitors
replied that they remained to have no instruction to attend the hearing on 1

- 4 -

December 2008. However, they wished to make a written submission on the claim for interest. The tribunal decided to allow such submission.

18.    On 1 December 2008, an oral hearing took place at the HKIAC.   The Claimant appeared by Mr. Jackie Chen leading Mr. Wang Hui, both from the Global Law Office in Beijing. Neither the Respondent nor its solicitors turned up. The Respondent's solicitors stated that they had no instruction to attend. The tribunal decided to proceed *ex-parte* and, after hearing Mr. Chen's opening submissions and Mr. Cai's oral evidence, adjourned the hearing. The Claimant engaged Merrill Legal Solutions to provide transcript services and a copy of the transcript was sent to the Respondent's solicitors the next day after the hearing.

19.    On 15 December 2008, the Respondent's solicitors informed the tribunal that Mr. Chang's condition had improved and he should be able to travel from early January 2009. The Respondent's solicitors asked the tribunal to fix a date in January 2009 to hear Mr. Chang's evidence.

20.    On 10 December 2008, the tribunal directed that the hearing be resumed in Hong Kong on 20 January 2009 for one day.

21.    On 15 December 2008, the Respondent's solicitors informed the tribunal that Mr. Chang could not book a flight and sought the tribunal's indulgence to fix a hearing date after the Chinese New Year.

22.    On 23 December 2008, the Respondent's solicitors served a supplemental witness statement of Mr. Chang on the tribunal and stated their position that the

Respondent was not content to proceed without an oral hearing. The Claimant objected to the admissibility of such witness statement on the ground that it was unacceptable to the Claimant unless they could cross-examine Mr. Chang at an oral hearing.

23. By a letter dated 6 January 2009, Mr. Chang informed the tribunal that he would proceed with this arbitration without a legal counsel representing him. He produced a board resolution of the Respondent which authorized him to represent, appear and act for the Respondent in this arbitration. He also confirmed his intention of not attending the hearing on 20 January 2009 as directed by the tribunal but rather he would furnish to the tribunal a supplementary witness statement.

24. In January 2009, the tribunal received further written submissions from both the Global Law Office and Mr. Chang himself.

25. The tribunal is obliged to give a reasoned award.

26. The basic facts are simple and are not in dispute:-

    (1) Mr. Chang was the president and the largest shareholder of the Respondent, a company incorporated under the laws of Texas, USA. In May 2004, he signed on behalf of the Respondent the Agreement for the distribution of wooden floor products supplied by the Claimant in the US market. The products were either manufactured by the Claimant itself or through its OEM factories. One year later, their scope of co-operation was extended

- 6 -

to cover kitchen cabinets. Effectively, the Respondent would act as the exclusive agent of the Claimant in selling these products in the US market.

(2)  In April 2006 their business relationship turned sour. There was an allegation from the Respondent that Suntech, a US subsidiary set up by the Claimant, had been ordering kitchen cabinets from the Claimant direct for distribution in the US market. This allegation was denied by the Claimant. The Respondent says in the Defence Submission that this amounted to a breach of Clauses 17 and 31 of the Agreement. As the Respondent decided not to pursue a counterclaim, the tribunal did not have to decide on this.

(3)  As the Respondent acted as the Claimant's exclusive agent in the USA, payments made by US customers were sent to the Respondent directly Clause 7 of the Agreement required the Respondent to pay "no later than 3 business days after receipt of payments from Effective Customer." The Respondent's payment to the Claimant therefore depended on when payment to the Respondent was made by US customers, not when the goods were shipped or delivered.

(4)  The Respondent received the last shipment of the goods (being the hardwood floor products ordered by the Respondent under the Agreement) on 22 July 2007.

27.  Essentially, the dispute boils down to three issues which are as follows:-

(1)   Whether there was an oral agreement made between Mr. Chang and Mr. Cai to the effect that the Respondent has until 21 January 2009 to repay any arrears to the Claimant;

(2)   Whether the Respondent was entitled to charge back US$25,793.33 for defective goods; and

(3)   Whether the Respondent was entitled to claim back US$140,000.00 being donations made to two charitable organisations in USA.

Preliminary observations

28.   Before we rule on the substantive issues, we wish to make two preliminary observations.

29.   Firstly, the tribunal has given every reasonable opportunity for the Respondent to present its case and to deal with the case of its opponents. Due notice of the hearing was given to parties several months in advance. The hearing dates were in fact accepted by the Respondent's. One would expect that the Respondent should procure the attendance of its witness at the hearing on 1 December 2008. Mr. Chang's refusal to attend the resumed hearing on 20 January 2009 (without any explanation) is even more disappointing to the tribunal.

30.   In Sanko Steamship Co Ltd. v The Shipping Corporation of India and Selwyn and Clark, the Jhansi Ki Rani (1980) 2 Lloyd's Rep 569, the following dicta of Lloyd J (cited in the tribunal's fax addressed to the parties dated 28 November

- 8 -

2008) are apposite:-

"Can it be said that [the arbitrators] have already been guilty of misconduct in refusing this adjournment? Can it be said that they would be guilty of misconduct now if they were to make their award without further adjournment? It seems to me that the answer to both questions must be: 'No'. It could not possibility be regarded as misconduct, of even the most technical kind, let alone real misconduct, for the arbitrators to make their award at this stage.

Any arbitration tribunal, or any court for that matter, which is asked to adjourn a hearing or to postpone a decision in order to enable a party to obtain further evidence has to balance considerations on both sides. On the one side there is the duty to hearing all the materials evidence which a party desires to lay before the tribunal, on the other hand there is the prejudice which may be caused to the other party by delay."

31.   Secondly, the Agreement contains a choice of law clause. Clause 28 of the Agreement states:-

"This Agreement shall be governed and construed in accordance with the laws of the People's Republic of Laws."

32.   Neither party sought leave from the tribunal to adduce expert evidence on PRC law. The approach adopted by the tribunal is therefore to decide the issues on the assumption that PRC law would be the same as Hong Kong law.

Oral agreement

33.   Mr. Cai was the General Manager of the Claimant.  He flew to Texas in October 2006 and met Mr. Chang for the purpose of following up the payment. When Mr. Chang asked for payments to be deferred for 18 month, he did not agree. At the hearing, he gave the following evidence:-

- 9 -

"This company is a Chinese national company, China-owned company and, firstly, there is a clause in the agreement which we have to strictly adhere to and, furthermore, as far as accounting and the legal aspects are concerned, delay in payment is not allowed. As far as I am concerned, under the law should the other party, the respondent, like to negotiate with us for deferment in payment, then first of all they should supply us the grounds in written form for our consideration. I mean to say that they had asked me about it. In reply I said that, under the aspects of national regulation accounting and legal aspects, definitely deferred payment is not allowed."

34.   We accept Mr. Cai's evidence in this regard. We find as a fact that in a meeting with Mr. Chang at a hotel in Beijing in July 2007, Mr. Cai had chased Mr. Chang for payment of the outstanding sums and there was no agreement on deferred payment in the manner as alleged by Mr. Chang.

35.   We are fortified in our finding by the fact that although e-mails were exchanged between Mr. Chang and staff of the Claimant on payment delay, Mr. Chang did not in his e-mail refer to his agreement with Mr. Cai that the Respondent could repay within 18 months or that the Respondent has until 21 January 2009 to repay any arrears.

36.   We also find as a fact that the Respondent was having serious cashflow problems. According to Mr. Cai's testimony, Mr. Chang had told him that because of his investment on a company called Crossroad Company, he ended up not being able to make repayments to the Claimant and he hoped that payment could be deferred. This part of Mr. Cai's evidence was not challenged by Mr. Chang in his January 2009 statement.

37. Parties are also on common ground that remittance was made to the Claimant by stage (US$63,814.65 on 11 December 2007, US$100,000.00 on 27 December 2007 and US$100,000.00 on 2 January 2008). This was inconsistent with the existence of an oral agreement to defer payment for 18 months. The last shipment of goods was received on 22 July 2007. It is inconceivable that if Mr. Cai had agreed to Mr. Chang's request to defer payment for 18 months, Mr. Chang would have remitted three times after 22 July 2007.

38. By any yardstick, an oral agreement of this nature would constitute a major variation to the Agreement. Clause 23 of the Agreement reads:-

    "The parties hereby agree that this Agreement may be modified only by a written agreement duly executed by persons authorized to execute agreements on behalf of the parties."

39. It would defy common sense if Mr. Chang did not want to record his oral agreement with Mr. Cai in writing as he was dealing with a large state-owned enterprise in China. In any event, the defence raised is unsustainable in law. Even if Mr. Cai had made such promise, it is *nudum pactum*, being without consideration, and as such there is no consideration to support a variation of the contract.

40. The Claimant maintained a good transaction record file named "Invoice Tracking", the accuracy of which was not seriously challenged. We are satisfied on the evidence that the Claimant's claim was proved on a balance of probabilities. A sum of US$2,975,443.06 was indisputably due, subject to the equitable set-off of defects in goods and donations (which we shall consider in the following paragraphs). We reject Mr. Chang's evidence that Mr. Cai had

- 11 -

promised a 18 months' period for repayment of monies due to the Claimant under the Agreement.

## Defective goods

41.   This is a typical case to claim a balance of the price for goods sold and delivered.

42.   Under Clause 20 of the Agreement, the Claimant should indemnify and hold the Respondent free and harmless from any and all claims, damages or lawsuits (including attorney's fees) arising out of defects in the Products caused by the Claimant.

43.   As a matter of law, the terms of merchantable quality and fitness of goods ought to be implied into the Agreement. So the only issue is whether some of the goods shipped to US customers were defective or not.

44.   There is strong evidence that some of the goods delivered to US customers were defective. The complaints by Lumber Liquidators and other hardwood flooring customers, were well-documented. The deduction of US$25,793.33 was reasonable. We hold that the Respondent was entitled to deduct US$25,793.33 from the sum due to the Claimant. The sum due to the Claimant under the Agreement is therefore US$2,949,649.73 (US$2,975,443.06 – US$25,793.33).

Donations

45.  There is no dispute that Mr. Chang had made a donation of US$50,000.00 to the National Braille Press in 2006 and 2007 and another donation of US$90,000.00 to Perkins School for the Blind in 2007 and 2008, all in the name of the Claimant.

46.  However, we are unable to find any contemporaneous documentary evidence to record the existence of an agreement between the parties or that this had been approved by Mr. Cai on behalf of the Claimant.

47.  Further, we are of the view that this should fall outside the ambit of the arbitration agreement. It has nothing to do with the supply of goods under the Agreement. Mr. Chang had, in his January 2009 statement, made more factual allegations in rebuttal to Mr. Cai's evidence. But little weight can be given by the tribunal as Mr. Chang did not avail himself of the opportunity to be cross-examined. If the Respondent has a valid claim to pursue this against the Claimant, it should do so in another forum.

48.  In the circumstances, we hold that the Respondent was not entitled to claim an equitable set-off for the donations in this reference.

Interest

49.  The Claimant claims interest in the sum of US$2,811,569.45, calculated at the rate of 2% per week from the due date up to 30 June 208. This is based on

Clause 7 of the Agreement, which states:-

"(2)  If payments made by Effective Customer are sent to Agent directly, Agent agrees to deliver Company's portion no later than 3 business days after receipt of payments from Effective Customer. 2% weekly interest charge will apply if the payment is not received by Company within the said period."

50.  In a carefully researched and thorough submission, the Respondent says that the rate claimed by the Claimant is extremely onerous and amounts to a penalty rather than liquidated damages. We agree. We bear in mind that this is a commercial contract where the parties have, on equal terms, agreed to the default interest and that such provision to cater for an event of default has become a common feature in modern commercial contracts. However, the rate at 2% per week is, on any view, an extravagant or excessive rate being in terrorem of the Respondent. Hence, we hold that Clause 7(2) of the Agreement is a penalty and is unenforceable against the Respondent.

51.  Section 2GH(1) of the Arbitration Ordinance confers upon an arbitral tribunal the power to award simple or compound interest on money awarded by the tribunal in the proceedings.  In exercising our power under section 2GH(1) of the Arbitration Ordinance, we shall adopt a realistic rate of interest. In commercial cases a realistic rate of interest is one at which the Claimant could borrow money at the relevant time. The proper figure for interest is 1% above the best lending rate in Hong Kong: see Komaln Decof & Others v Perusahaan Pentambangan Costs (1984) HKLR 219. For the sake of simplicity, we shall adopt a flat rate of 6% per annum. In doing so, we take note of such best lending rates as may be charged by HSBC Hong Kong to their most

- 14 -

credit-worthy customers during the period in question.

52.  Although each shipment gives a different due date for payment, this arbitration did not commence until 30 January 2008. We find it just and equitable if we award interest from 30 January 2008 until the date of payment. Such award would be sufficient to compensate the Claimant on the late receipt of the claimed sum.

Costs

53.  Under Section 2GJ of the Arbitration Ordinance, the arbitral tribunal has a power to award costs including the scale of costs. The tribunal is also empowered to tax and settle the amount of costs to be paid.

54.  The Claimant has asked for *all* the arbitration costs to be borne by the Respondent as the Respondent intentionally delayed the arbitration procedure several times and its decision to abstain from the hearing has increased costs for the Claimant (including costs of this Award). In effect, the Claimant wants the tribunal to award costs on indemnity basis.

55.  The Claimant has also produced documentary evidence on the quantum of costs. This includes the booking fee of the hearing room (HK$27,000.00) the transcription and interpretation fees (HK$48,000.00), the attorney's fees (RMB2,000,000.00) and the arbitrators' fees.  The Claimant seeks to recover all the arbitration costs from the Respondent in full.

- 15 -

56.    On costs, we shall award costs of this arbitration in the Claimant's favour on party and party basis. We shall allow the booking fee of the hearing room (HK$27,000.00) and the transcription and interpretation fees (HK$48,000.00) in full. We shall tax down the Claimant's attorney's fees to a sum equivalent to HK$1,000,000.00, this being a reasonable assessment of the legal fees and expenses recoverable by the Claimant, given the nature of the claim and the work involved in this reference. We shall tax and settle our fees at HK$400,300.00. As either party may wish to have time to consider our decision on costs, we shall make an order *nisi* that the Respondent shall bear and pay its own costs and shall bear and pay the costs of the arbitration (including the costs of this Award), on party and party basis, which we hereby tax and settle at HK$1,475,300.00 (HK$400,300.00 for arbitrators' fees, HK$48,000.00 for transcription and interpretation fees, HK$27,000.00 for the booking fee of the hearing room and HK$1,000,000.00 for attorney's fees).

57.    If either party wishes to propose some costs order different from that indicated, or no order, it should notify the tribunal, with copy to the other party, in writing within 14 days of the date of this Award and state what costs order it contends for and why. If upon the expiry of 14 days from the date of this Award we have not received such a notification, we shall issue a final award on costs in the terms as indicated.

Now, the arbitral tribunal, consisting of

**Mr. Danny Choi** of Room 87, 8/F, New Henry House, 10 Ice House Street, Central, Hong Kong,

**Mr. Philip Yang** of Unit A, 18/F, Casey Building, 38 Lok Ku Road, Sheung Wan, Hong Kong, and

**Mr. Fred Kan** of 3104 Central Plaza, 18 Harbour Road, Hong Kong,

having assumed the burden of this arbitration and having considered all the oral and documentary evidence adduced by both parties and for the above reasons, do hereby **AWARD AND ADJUDGE** that:-

(1)    The Respondent shall pay forthwith the Claimant a sum of US$2,949,649.73.

(2)    The Respondent shall also pay interest on the sum awarded, namely, US$2,949,649.73, at the rate of 6% per annum, to be compounded at quarterly interval from 30 January 2008 until the date of payment.

We do hereby **MAKE AN ORDER NISI** that the Respondent shall bear and pay its own costs and shall bear and pay the costs of the arbitration (including the costs of this Award), on party and party basis, which we now tax and settle at HK$1,475,300.00 provided that, in the event that Respondent has paid part of the costs of the Award by way of deposits to the HKIAC, the reimbursement to the Claimant is to be deducted from the sum so paid. If either party wishes to propose some costs order different from that indicated, or no order, it should notify the tribunal, with copy to the other party, in writing within 14 days of the date of this Award and state what costs order it contends for and why. If upon the expiry of 14 days from the date of this Award we have not received such a notification, we shall issue a final award on costs in the terms as indicated.

We reserve our power to determine any other issue not determined in this Award.

Save and except those matters expressly reserved, this Award is final.

**IN WITNESS WHEREOF** we have hereunto set our hands in Hong Kong this 23rd day of January 2009.

| | | |
|---|---|---|
| Danny Choi | Philip Yang | Fred Kan |
| The Arbitrator | The Arbitrator | The Arbitrator |

Witnessed by:-          Witnessed by:-          Witnessed by:-

Kat Wai Cheong                                TSOI TOI TO

- 18 -