IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CHINA NATIONAL BUILDING MATERIAL
INVESTMENT CO., LTD,
        **Plaintiff,**

-vs-                     Case No. A-09-CA-488-SS

BNK INTERNATIONAL LLC,
        **Defendant.**

_____

# **O R D E R**

BE IT REMEMBERED on November 16, 2009 the Court held a hearing in the above-styled cause, and the parties appeared through counsel. Before the Court were Plaintiff China National Building Material Investment Company ("Plaintiff")'s Motion to Confirm a Foreign Arbitration Award [#1], Plaintiff's memorandum in support thereof [#8], and Defendant BNK International LLC ("Defendant")'s response thereto [#10]; and Defendant's Motion for Summary Judgment [#14], Plaintiff's response thereto [#15], and Defendant's reply [#17]. The Court allowed each party ten days after the hearing within which to supplement the record with relevant evidence. Plaintiff timely filed its supplement [#22] on November 23, 2009, and Defendant filed its supplement [#23] late on November 27, 2009. Nonetheless, the Court will consider both supplements in the interest of developing the record as fully as possible. Having considered all of the aforementioned documents, the case file as a whole, and the relevant law, the Court enters the following opinion and orders.

## BACKGROUND

Plaintiff China National is a Chinese entity with its principal place of business in China. Pl.'s Appl. [#1] at ¶ 1. Defendant BNK is a Texas limited liability company located in Austin, Texas. *Id.*

at ¶ 2. Jeffrey Chang ("Chang"), at all relevant times, was the president and largest shareholder of Defendant. In 2004, Defendant entered into an agreement with BND Co., Ltd. ("BND") under which Defendant agreed to secure customers for BND in the United States to purchase hardwood floor products. The agreement was entitled the "Agency Agreement." *See* Def.'s Ex. 3. The Agency Agreement stated any controversy or claim arising out of the agreement was to be submitted to arbitration in Hong Kong. *Id.* at ¶ 28.

A dispute ultimately arose between the parties to the Agency Agreement.[1] In January of 2008, Plaintiff served a Notice of Arbitration on Defendant. An arbitral tribunal of three arbitrators was established by May of 2008, and the parties proceeded to arbitration in Hong Kong. In January of 2009, Plaintiff won a final arbitration award, except as of costs, of $2,949,649.73 (the "First Award"). *See* Pl.'s Appl. at Ex. B. The First Award also provides Defendant must pay 6% per annum, to be compounded at quarterly intervals from January 30, 2008 until the date of payment. *Id.* at 17. In March of 2009, Plaintiff won a second final arbitration award (the "Second Award," or collectively with the First Award, the "Awards") on its costs, in the amount of $192,185.59. *Id.* at Ex. C. Plaintiff seeks confirmation of both Awards, which were entered in Hong Kong pursuant to the Hong Kong International Arbitration Center.

Plaintiff filed an application to confirm and enforce the foreign arbitration award in this Court on June 25, 2009. Pl.'s Appl. [#1]. Defendant's Answer admits the Awards were entered against it, but "subject to Defendant's right to challenge recognition and enforcement of the award." Def.'s Answer at ¶¶ 5-8. On September 28, 2009, Defendant filed a motion for summary judgment, in which

---

[1]Plaintiff claims to be a party to the Agency Agreement, on the grounds it was formerly known as BND but underwent a name change sometime after it entered into the Agency Agreement with Defendant. Defendant denies Plaintiff and BND should be treated as the same entity. Thos issue is discussed in more detail *infra*.

it raises several affirmative defenses to enforcement of the Awards. The Court held a hearing on all pending matters on November 16, 2009.

ANALYSIS

I. **Legal Standards**

   a. **Summary Judgment Standard**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### b. The New York Convention

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"), 21 U.S.T. 2517 (1970), was adopted by the United States in 1970. This Court's subject matter jurisdiction is founded upon the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which implements the New York Convention. *See* 9 U.S.C. §§ 202-208. Countries that are parties to the New York Convention, including the United States and China, agree to recognize each other's arbitral awards and to enforce them in accordance with the rules of procedure of the place where the award is relied upon. *See Geotech Lizenz AG v. Evergreen Sys., Inc.*, 697 F.Supp. 1248, 1252 (E.D.N.Y. 1988). Because a foreign arbitration award is not self-executing, the award must be converted to a court judgment in order to be enforceable. *Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 220 (5th Cir. 1999). But the district court's role is limited; conformation of a foreign arbitral award is characterized as a "summary proceeding," which merely converts what is already a final decision into a judgment of a court. *Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Medical & Scientific Corp.*, 399 F.Supp.2d 165, 168 (E.D.N.Y. 2005).

The procedure for obtaining enforcement of a foreign award is relatively straightforward: "[t]he party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation." *Id.* (citing the New York Convention at Art. IV). Upon submission of these materials, the party resisting confirmation bears the burden of showing one of the circumstances warranting denial of enforcement, as set forth in the New York Convention, is present. *Id.* (citation omitted). Article V of the New York Convention enumerates the exclusive grounds on which an enforcing court may refuse recognition and enforcement of an award. *Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 747 (5th Cir. 2008). The grounds are strictly limited and, in view of the strong public policy

favoring arbitration, are to be narrowly construed. *Jiangsu Changlong Chems., Co.*, 399 F. Supp. 2d at 168.

## II.     Application to the Present Case

In its application for enforcement of the Awards, Plaintiff contends all statutory prerequisites to confirmance of the Awards are present and no disputed material facts exist to preclude entry of judgment and judicial recognition of the Awards. Plaintiff has undisputedly submitted an authentic copy of the Awards (which are in English) and a copy of the Agency Agreement (which contains the agreement to arbitrate). *See* Pl.'s Appl. at Exs. A-C.

However, Defendant claims in its motion for summary judgment Plaintiff is not entitled to enforce the Awards, based on the following grounds.

### a.     Standing

First, Defendant claims Plaintiff lacks standing to bring an action for enforcement of the arbitration award because (1) the original Agency Agreement was between Defendant and a company called BND, not Plaintiff, *see* Def.'s Mot. Summ. J. at ¶ 3; and (2) Plaintiff has not presented the duly authenticated original award (or a certified copy) to the Court, as is required by article IV(1) of the New York Convention.[2] The second point is moot as of the date of the hearing, at which counsel for Plaintiff submitted certified copies of the original Awards. Counsel for Defendant did not object to

---

[2]Article IV(1) provides:

To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy          thereof.

-5-

their authenticity. Thus, the Court turns to Defendant's first standing argument, concerning the difference (if any) between BND and Plaintiff.

Defendant claims BND, the other original party to the Agency Agreement, is actually a subsidiary of a company called "BNBM," which in turn is a "platform" of Plaintiff. Def.'s Mot. Summ. J. at ¶ 3. Defendant claims Plaintiff purports to act in the place of BND, but may not do so because it is not the same entity as BND. Thus, Defendant claims Plaintiff does not have standing to enforce the Agency Agreement against it.

In response, Plaintiff claims Defendant's objection is untimely and has been waived. *See* Pl.'s Suppl. [#22] at 2. Plaintiff is absolutely correct. Courts considering this matter have long held a party resisting an arbitration award must raise the defense that it cannot be compelled to submit to arbitration by the opposing party ***before*** the arbitration award is made. *See, e.g. Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001); *Nat'l Dev. Co. v. Khashoggi*, 781 F Supp 959, 963 (S.D.N.Y. 1992). For instance, in *Staney*, the Seventh Circuit admonished a party who argued at the enforcement stage there was no valid agreement to arbitrate between her and the party that sought to enforce its award, stating:

> Our judicial system is not meant to provide a second bite at the apple for those who have sought adjudication of their disputes in other forums and are not content with the resolution they have received. [The defendant] had the opportunity to show that she had never agreed to arbitrate the dispute when she was notified of the arbitration, but she let that opportunity pass. [The defendant] could not sit back and allow the arbitration to go forward, and only after it was all done...say: oh by the way, we never agreed to the arbitration clause. That is a tactic that the law of arbitration, with its commitment to speed, will not tolerate. ***If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter.***

244 F.3d at 591 (emphasis added) (internal citations omitted). Because the defendant in *Staney* had freely participated in the arbitration proceeding without raising the defense, the Seventh Circuit found

it would be improper to invalidate the arbitral tribunal's award on the ground there was no written agreement.

The present case is remarkably similar. It is undisputed Defendant freely participated in the arbitration proceeding, in which Plaintiff was the "Applicant", without ever raising the issue of whether Plaintiff could stand in the shoes of BND and enforce the Agency Agreement. All parties, including Defendant, assumed Plaintiff properly did so. Defendant specifically admitted during the course of the arbitration: "[Defendant] accepts that it owes the Applicant [defined as China National Building Material Investment Co. Ltd. f/k/a "BND"] a sum of US $2,809,649.73." *See* Pl.'s Suppl. at Ex. A (letter submitted by Defendant's counsel to the arbitration panel on August 15, 2008), ¶ 7.

This admission was echoed throughout the entire arbitration process. For instance, Mr. Chang, Defendant's president, specifically admitted on December 1, 2008, "[c]alculation by [Defendant] shows it owes the Applicant a sum of US $2,809,649,73." *Id.* at Ex. B, ¶ 2. Mr. Chang's entire written submission assumes the Agency Agreement was an agreement between Defendant and Plaintiff (China National). In short, the record is clear that during the entire arbitration proceeding Defendant made no objection to Plaintiff enforcing its rights under the Agency Agreement. Furthermore, even prior to the arbitration, in December of 2007, Defendant knew of Plaintiff's existence and wired funds to Plaintiff's bank account in accordance with the terms of the Agency Agreement. *See id.* at Ex. C (admitting these facts).

Thus, it is only now—after Plaintiff has prevailed in arbitration and seeks to confirm the Awards issued in its favor—that Defendant raises ***for the first time*** its argument that BNK and Plaintiff are not one and the same entity, and Plaintiff therefore has no standing to enforce that Agreement against Defendant. A New York district court considered a similar circumstance in *Data-Stream*, in

which the plaintiff petitioned the district court for confirmation of an arbitration award, and the defendant argued the plaintiff did not have standing to pursue confirmation of the award. *Data-Stream AS/RS Techs., LLC v. China Intern. Marine Containers, Ltd.*, 2003 WL 22519456 at *2-3 (S.D.N.Y. 2003). The court reasoned that if the defendant truly believed its position, "it should have refused to participate in the arbitration and forced [the plaintiff] to bring a district court action to compel its participation." *Id.* at *3. The defendant then could have asserted its belief it could not be forced to arbitrate by the plaintiff "in the appropriate forum at the appropriate juncture:" prior to the arbitration, in response to a motion to compel participation, rather than after a lengthy arbitration in opposition to a motion to confirm the arbitration award. *Id.* (citing *In the Matter of Hidrocarburos y Derivados, C.A.*, 453 F.Supp. 160, 177 (S.D.N.Y. 1978)). The court concluded,

> By actively participating and waiting until an award has been entered against it to complain to a district court, [the defendant] is essentially seeking a second bite at the apple. Were the Court to allow this to occur, it would undermine the twin goals of arbitration: efficient resolution of disputes and avoidance of costly litigation.

*Id.*

Exactly the same rationale applies to the present case. When Plaintiff China National served a notice of arbitration on Defendant, Defendant was at that point entitled to refuse to participate in the arbitration. If Defendant had truly believed Plaintiff and BND were not the same entity, it could have forced Plaintiff to bring a district court action to compel its participation in the arbitration. Thus the objection to Plaintiff's standing would have been raised in the appropriate forum at the appropriate juncture: prior to the arbitration in an action to compel arbitration. *See Khashoggi*, 781 F. Supp. at 963 ("The time for [the defendant in an action to enforce an arbitration award] to argue that he could not be compelled to submit to arbitration...was in [the] action to compel him to arbitrate."). To allow Defendant to raise this argument now would essentially render international arbitration proceedings

frivolous. It would enable a party to allow arbitration to proceed without ever raising the issue of the applicant's standing, and even to admit it owed money to the applicant, but then to challenge the arbitration award when the applicant seeks to enforce it in the United States. The reliability of international arbitration awards would be totally undermined, and the goal of efficient and cost-effective resolution of disputes would be forever frustrated, were such behavior encouraged by district courts in the United States.

In accordance with the foregoing reasoning, the Court finds Defendant's objection to Plaintiff's standing should not be reached on its merits by this Court, as the objection is untimely and has been waived by Defendant's conduct. At the very least, Defendant's consistent representation throughout the arbitration proceeding that Defendant owed Plaintiff money under the terms of the Agency Agreement, and its failure to raise its concerns about whether BND and Plaintiff were one and the same, compel this holding. *See* Pl.'s Suppl. at Exs. A-C. Defendant's motion for summary judgment is therefore DENIED on this ground, as there is no genuine issue of material fact on the issue of Plaintiff's standing to seek confirmation of the Awards in this Court.

  **b.**  **Article V Defenses**

Defendant also raises a plethora of affirmative defenses under article V of the New York Convention. The Court considers each in turn.

  *(1)*  *Disability of a Party*

The New York Convention allows a court to refuse to enforce an arbitration award if the movant furnishes competent proof "[t]he parties to the agreement...were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it[.]" *See* New York Convention at V(1)(a). Defendant claims its corporate representative and principal witness, Jeffrey Chang, suffered an "acute herniated disc" and was unable to travel or

participate in the arbitration hearing because of excruciating pain. But Plaintiff responds the incapacity defense requires the challenging party to prove it was under an incapacity at the time the agreement was entered into, not at the time of the arbitration proceeding. *See Polytek Engin. Co., Ltd. v. Jacobson Cos.*, 984 F.Supp. 1238, 1242 (D. Minn. 1997) ("[t]he challenging party must prove...it was under an incapacity *at the time the agreement was made*[.]) (emphasis added).

The New York Convention does not indicate expressly which is the relevant moment to judge whether a party was under an incapacity for purposes of article V(1)(a). However, this Court agrees with Plaintiff's interpretation of the language of article V(1)(a), which as a whole appears to refer to the validity of the underlying agreement to arbitrate. For example, article V(1)(a) refers to the "parties to the Agreement," and not to the "parties to the arbitral procedure." Because the record is entirely devoid of proof either Defendant or Mr. Chang was suffering under any incapacity at the time it entered into the Agency Agreement, summary judgment on this ground is DENIED.

### *(2)* *Lack of Due Process*

The New York Convention also allows a court to refuse to enforce an arbitration award if the movant furnishes competent proof "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." *See* New York Convention at V(1)(b). The Fifth Circuit has interpreted this provision to require a fundamentally fair hearing that gave the party a "meaningful opportunity to be heard" under United States standards of due process. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298-99 (5th Cir. 2004). In other words, the hearing should "meet the minimal requirements of due process": adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. *Id.* The parties must have an opportunity to be heard "at a meaningful time and in a meaningful manner," although the right to due process "does not

include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Id.* at 299.

Defendant asks the Court to rule on summary judgment the hearing by the arbitral tribunal in the present case was fundamentally unfair. Def.'s Mot. Summ. J. at ¶ 13. To evaluate this claim, a short history of the arbitration proceedings are in order. The procedural facts are basically undisputed, and were set out concisely by the tribunal in the First Award. Plaintiff's appointed arbitrator served Defendant with a Notice of Arbitration on January 30, 2008. First Award at ¶ 4. Defendant did not respond to the Notice, and therefore the Hong Kong International Arbitration Center ("HKIAC") appointed an arbitrator for Defendant on May 22, 2008. *Id.* at ¶ 5. Plaintiff and Defendant's appointed arbitrators then jointly appointed a third arbitrator, such that the tribunal was "properly constituted" on May 28, 2008. *Id.* at ¶ 7.

In October 2008, the tribunal set a hearing for December 1, 2008. However, on November 19, 2008, Defendant's lawyers advised the tribunal that Mr. Chang suffered from a medical condition and "it was unlikely that he would be able to travel to Hong Kong to attend" the December 1, 2008 hearing. *Id.* at ¶ 13. Mr. Chang had an acute herniated disc in his low back. *Id.* As explained by the tribunal, "As no indication was received as to when Mr. Chang would be fit to travel and given that [Plaintiff] had booked the HKIAC for the hearing and also arranged for [its witness] to come to Hong Kong, the tribunal was reluctant to adjourn the hearing." *Id.* at ¶ 14. Thus, it gave Mr. Chang the option of attending via video-conferencing, or of having the tribunal hear only the testimony of Plaintiff's witness at the December 1 hearing (with Defendant's lawyers present to cross-examine him), and then adjourning the hearing part-heard. *Id.*

But Defendant's lawyers informed the tribunal Mr. Chang "refused to attend the hearing by video-conferencing and insisted on adjournment until such time as [he] could attend and give evidence in person." *Id.* at ¶ 15. Mr. Chang did not propose any new date on which to reset the hearing. *Id.* Mr. Chang subsequently informed the tribunal he would abstain from the December 1 hearing. *Id.* at ¶ 16. The tribunal "tried to persuade [Defendant] to instruct its solicitors to attend the hearing even though Mr. Chang's condition precluded his ability to travel," noting Defendant was represented by the competent law firm of DLA Piper in Hong Kong. *Id.* at ¶ 17. The tribunal expressly reminded Defendant its right to cross-examine Plaintiff's witness should not be given up lightly. *Id.* Defendant's solicitors responded they had no instruction to attend the hearing, but did wish to make a written submission, which the tribunal allowed them to do.

The hearing was duly held on December 1, 2008, without Defendant or its attorneys. *Id.* at ¶ 18. The tribunal proceeded *ex parte* and, after hearing Plaintiff's counsel's opening submissions and the evidence of Plaintiff's witness, the tribunal adjourned the hearing. *Id.* A copy of the hearing transcript was sent to Defendant's counsel the day after the hearing. *Id.* Following the hearing, Defendant's lawyers informed the tribunal Mr. Chang's condition had improved and he "should be able to travel from early January 2009." *Id.* at ¶ 19. The tribunal was asked to fix a date in January to hear Mr. Chang's testimony. *Id.* The tribunal did so, directing the hearing be resumed in Hong Kong on January 20, 2009. *Id.* at ¶ 20. However, on December 15, 2009, Defendant's lawyers informed the tribunal Mr. Chang could not book a flight for the January 20 hearing after all. *Id.* at ¶ 21. On December 23, 2008, Defendant's lawyers served Mr. Chang's "supplemental witness statement" on the tribunal, to which Plaintiff objected unless it was allowed to cross-examine Mr. Chang. *Id.* at ¶ 22.

By letter on January 6, 2009, Mr. Chang informed the tribunal he would proceed without legal counsel representing him. *Id.* at ¶ 23. He produced a board resolution of Defendant authorizing him to represent, appear, and act for Defendant in the arbitration. *Id.* He confirmed he would not attend the January 20, 2009 hearing, but would instead furnish a supplemental witness statement to the tribunal. *Id.* He supplied the supplemental statement in January 2009, and the tribunal subsequently made its decision and entered the Awards. *Id.* at ¶ 24.

In its present motion, Defendant claims the above-described hearings were not fundamentally fair because the tribunal knew in advance Mr. Chang was "unfit medically to attend," but proceeded nonetheless. Def.'s Mot. Summ. J. at ¶ 15. But Defendant fails to take into account the numerous and repeated accommodations (and offers of accommodations) Mr. Chang was given by the tribunal. Mr. Chang (and through him, Defendant) may well have been inconvenienced by the fact the hearings took place in Hong Kong. But the simple truth is that Defendant willingly did business with a Chinese company and willingly entered into an agreement to arbitrate its disputes in Hong Kong. Thus, Mr. Chang's inconvenience in attending hearings held in that forum does not amount to a denial of Defendant's due process rights. Mr. Chang failed to personally appear—either in person, via video-conferencing, or through his Hong Kong attorneys—at a hearing at which every reasonable accommodation was made for him, and he did so at his own peril. He and his attorneys also continued to submit witness statements explaining his position in lieu of actually appearing before the tribunal; in fact, during the time the arbitration was proceeding, Defendant submitted "Defence Submissions" in response to Plaintiff's Statement of Claims, as well as numerous witness statements from Mr. Chang. *Id.* at ¶¶ 9, 11, 17, 22, 24. Accordingly, the Court finds Defendant has not introduced even

a scintilla of evidence it did not have adequate notice, a hearing on the evidence, or an impartial tribunal. Summary judgment is DENIED on this ground.

### c. Arbitral Misconduct

In an almost identical defense, Defendant claims the failure to postpone the December 1, 2008 hearing constituted "fundamental unfairness and misconduct" by the arbitral panel sufficient to overturn the Awards. His complaints on this ground are identical to those raised in the proceeding defense, and the Court similarly rejects them.

### d. Arbitral Proceeding

Article V(1)(d) of the New York Convention allows a party to seek to vacate an award if it can prove "the arbitral procedure was not in accordance with the agreement of the parties." Defendant claims Mr. Chang's not being in attendance during the hearings of the arbitral tribunal violated the Agency Agreement between the parties (which contains the agreement to arbitrate). However, the Agreement makes no reference to the parties' personal attendance at any arbitration hearing—it simply sets forth where the arbitration shall take place (Hong Kong) and which law is to govern. *See* Agency Ag. at ¶ 28. Notably, Defendant does not cite any specific part of the Agreement that was allegedly violated by the fact Mr. Chang did not personally attend the hearing. The motion is therefore DENIED on this ground.

### e. Public Policy

Finally, article V(2)(b) of the New York Convention allows a party to seek to vacate an arbitral award if it can prove "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." Defendant claims because the hearing was *ex parte*, it lacked due process and therefore violates the public policy of the United States, essentially rehashing the same argument raised in its due process defense. However, it is well-known "[t]he public policy limitation in the Convention

is construed very narrowly and applied only where enforcement would violate the forum state's most basic notions of morality and justice." *In the Matter of Arbitration Between Trans Chemical Ltd. and China Nat. Machinery Import and Export Corp.*, 978 F.Supp. 266, 310 n. 193 (S.D. Tex. 1997), *opinion adopted in* 151 F.3d 314 (5th Cir. 1998). Such is not the case here, for the same reasons the Court rejected Defendant's due process defense. Defendant presents no convincing argument enforcement of the Awards violates basic notions of morality and justice, and thus this ground for summary judgment is also DENIED.

### CONCLUSION

In accordance with the foregoing,

IT IS ORDERED that Plaintiff China National Building Material Investment Company's Motion to Confirm a Foreign Arbitration Award [#1] is GRANTED, and the Court will accordingly enter final judgment in accordance with the First and Second Awards issued by the arbitration tribunal.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [#14] is DENIED in full.

SIGNED this the 3rd day of December 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE